UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

LINDA CALDWELL,
    Plaintiff,

vs.                                                                 03-1417

CHERYL EWING, et al.,
    Defendants.

**ORDER**

This cause is before the court for consideration of the defendants' motion for summary judgement. [d/e 52].

## I. BACKGROUND

The pro se plaintiff originally filed her complaint pursuant to 42 U.S.C.§ 1983 against fourteen defendants at the Dwight Correctional Center. On March 17, 2005, the court granted the defendants' motion to dismiss the complaint in part and denied the motion in part. *See* March 17, 2005 Court Order. The court dismissed all defendants except Mail Room Supervisor Cheryl Ewing, Warden Lynn Cahill-Masching, Illinois Department of Corrections Director Donald Snyder, Administrative Review Board Member Melody Ford, Officers Ray Lovell, Patricia Kuhse and Don Johnson. The court found the plaintiff had the following surviving claims:

> 1) Defendants Ewing, Lovell, Cahill-Masching, Snyder and Ford violated the plaintiff's First Amendment rights by denying her only avenue of religious study.
> 2) Defendants Ewing, Lovell, Cahill-Masching, Snyder and Ford violated the plaintiff's First Amendment, Equal Protection and Due Process rights when the plaintiff was denied various African American magazines without any explanation.
> 3) Defendants Ewing, Lovell, Cahill-Masching, Snyder and Ford retaliated against the plaintiff for her grievances and legal activities by denying "legal" status to her ACLU and NAACP letters.
> 4) Defendants Kuhse, Johnson, Ewing, Lovell, Cahill-Masching, Snyder and Ford violated the plaintiff's First Amendment rights by either opening privileged or legal mail outside her presence or causing lengthy delays in receiving mail.
> 5) Defendants Ewing, Lovell, Cahill-Masching, Snyder and Ford violated the plaintiff's First Amendment right to meaningful access to the courts when they delayed legal mail and the plaintiff missed court deadlines.

## II. FACTS

The plaintiff did not directly respond to the defendants statement of facts. The following

facts are taken from the motion for summary judgement, the response and the attachments provided.

Defendant Donald Snyder is the Director of the Illinois Department of Corrections. He did not review or sign any grievances or Administrative Review Board Decisions involving the plaintiff.

Defendant Melody Ford is an Administrative Review Board Member. She considered many of the plaintiff's appeals. She says in each case, she reviewed the grievances, counselor responses and grievance officer reports before upholding the denial of the plaintiff's grievance. However, Ford says she is not personally involved in the decisions concerning whether an inmate is allowed self-addressed stamped envelopes, what magazines are allowed, what mail is considered legal and how and when an inmate may receive free envelopes. The defendant says she does not implement department rules and most of these decisions are made at the institutions. Lastly, the defendant says she did not personally open, delay or have contact with the plaintiffs mail.

Defendant Cahill- Masching is the Dwight Correctional Center Warden. The defendant says she does not personally review or address every offender letter or grievance received by her office and instead appoints designees to handle these documents. Consequently, the defendant says she did not review the grievances involved in this case and was not involved in the final decisions.

The plaintiff was housed in the Mental Health Unit at Dwight Correctional Center from October 27, 1999 to October 26, 2000. The plaintiff was then housed in the segregation unit at the facility.

The plaintiff says she is a Christian. Inmates in segregation are not allowed to attend communal religious activities for security reasons. The plaintiff says she was receiving bible studies from the Rock of Ages Prison and other ministries. The plaintiff says she would study the lessons she received. She would then send the lessons back to the Rock of Ages Prison, they would correct her work and send her new material. The plaintiff also had a bible to use for the lessons. At some point, the plaintiff was no longer able to participate in the bible study sessions because she could not send the materials back in the self-addressed, pre-paid envelopes provided by the church.

The plaintiff was not able to use the envelopes because they were considered contraband. The defendants say inmates were using and trading the self-addressed, pre-paid envelopes like money. The envelopes were confiscated from any inmate who was found with them. It is not clear from either party when the plaintiff was prevented from participating in the bible study sessions or how long she was prevented from participating. In fact, the plaintiff in her deposition says she "worked on Bible lesson every single day and I still do." (Plain. Depo, p. 10). The defendants also state there was a Chaplain that visited the inmates on a regular basis and was available to help with religious studies.

2

The plaintiff says she had a personal subscription to Vibe Magazine, but not to the other magazines she says she was denied. Dwight Correctional Center did have a general subscription to Source, Right On and Sister to Sister Magazines for a period of time. The plaintiff says she was able to have a couple of Vibe magazines, but did have one confiscated. The plaintiff says she was told the Publication Review Committee denied the magazine due to security concerns. The plaintiff says she does not know if Caucasian magazines were also confiscated. The plaintiff also says she did not contact the committee to find out why she was denied the magazine.

The Central Publications Review Committee maintains a list of various magazines that are approved, disapproved or approved with the removal of certain pages. Once a magazine is on the list, the individual correctional centers do not have the discretion to perform any further review. In 2001, several months of Vibe magazine were allowed if certain pages were removed. In addition, five months of the magazine were disapproved in their entirety. None of the defendants were on the Central Publications Review Committee and none of the defendants personally banned the plaintiff from receiving Vibe magazine.

Only Defendant Kuhse had any involvement with the plaintiff's mail and her responsibility was simply to deliver the mail to the plaintiff's cell. The Department of Corrections has specifically identified mail that will be considered "privileged" or "legal" mail. Legal mail is only opened if the legitimacy of the mailing could be determined from the envelope. Otherwise, legal mail is opened only in front of the inmate. The defendants do not consider mail from the NAACP or ACLU as legal mail since these groups are considered referral agencies by the department. The defendants also state that if mail was addressed to a specific attorney at either organization, it would be considered legal mail.

The defendants also say that mail marked "return to sender" is opened and inspected for contraband or unauthorized communication. The defendants say it is not uncommon for inmates to try and communicate by placing another inmate's return address on an undeliverable piece of mail in hopes that it will make its way to the inmate listed on the return address.

None of the defendants denied the plaintiff free envelopes. The envelopes were available in the law library or from the commissary. The plaintiff says she did have a federal case dismissed apparently due to missing a deadline. However, the plaintiff wrote to the court and explained what happened and her case was reinstated. The plaintiff says she was able to get time extensions to help with any other delays.

III. LEGAL STANDARD

The entry of summary judgment is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(C). A "material fact" is one that "might affect the outcome of the suit." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute

3

is genuine only if a reasonable jury could find for the nonmoving party.  Id.

A party moving for summary judgment initially has the burden of showing the absence of any genuine issue of material fact in evidence of record.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 153 (1970);   Schroeder v. Barth, Inc., 969 F.2d 421, 423 (7th Cir. 1992).  A nonmoving party cannot rest on its pleadings, but must demonstrate that there is admissible evidence that will support its position.   Tolle v. Carroll Touch, Inc., 23 F.3d 174, 178 (7th Cir. 1994).  "Summary judgement is not a discretionary remedy.  If the plaintiff lacks enough evidence, summary judgement must be granted."  Jones v. Johnson, 26 F.3d 727, 728 (7th Cir. 1994).

## IV. ANALYSIS

A.  PERSONAL INVOLVEMENT.

The defendants first argue that the plaintiff cannot demonstrate that the defendants had any direct personal involvement in many of her claims.   An individual is liable under §1983 only if he or she was "personally responsible for the deprivation of a constitutional right." Sanville v. McCaughtry, 266 F.3d 724, 739 (7th Cir. 2001), *citing* Chavez v. Illinois State Police, 251 F.3d 612, 652 (7th Cir. 2001); Gentry v. Duckworth, 65 F.3d 555, 561 (7th Cir. 1995).  Personal responsibility means participating directly in the constitutional violation or directing the unconstitutional conduct.  The mere fact that a defendant was a supervisor is insufficient to establish liability because the doctrine of respondeat superior (supervisor liability) does not apply to actions filed under  42 USC §1983.  Pacelli v. DeVito, 972 F.2d 871, 877 (7th Cir. 1992).  A supervisor cannot be held liable for the errors of his subordinates.

Defendant Snyder is the Illinois Department of Corrections Director and clearly cannot review all inmate appeals from all correctional centers.   Snyder's designees reviewed all of the grievances and appeals in this case and the defendants have identified which designees signed off on which appeals.  In addition, Defendant Cahill-Masching is the Dwight Correctional Center Warden and does not personally review all letters and grievances from inmates.  She did not review the grievances in this case, nor was she involved in the decision making.  Cahill-Masching has identified her designee, May Sigler, who signed each of the grievances.

The plaintiff has failed to demonstrate that Defendants Snyder or Cahill-Masching had any personal involvement in any of the plaintiff's claims.  Therefore, the court will dismiss these two defendants.  The court will determine the personal involvement of the remaining defendants as it considers each of the plaintiff's claims.

B.  RELIGIOUS STUDY

The defendants argue that the plaintiff has failed to demonstrate that confiscating her self-addressed envelopes violated her constitutional rights.  In order for the plaintiff to succeed on a claim that she was denied the free exercise of her religion, the plaintiff must first show: (1) that she espouse a *bona fide* religion, (2) that her beliefs are sincerely held, and (3) that the activity she wished to perform was essential to the practice of their religion.  <u>Wisconsin v. Yoder</u>, 406 U.S. 205 (1972).

The restrictions on the plaintiffs practice of their religion are still valid if the defendants can demonstrate that they were reasonably related to legitimate penological interests.  <u>O'Lone v. Estate of Shabazz</u>, 482 U.S. 342, 349 (1987); *citing* <u>Turner v. Safley</u>, 482 U.S. 78(1987). [1]  Such interests can include inmate security and the proper allocation of limited prison resources.  <u>Id</u>. at 348, 352-530.   The Court of Appeals for the Seventh Circuit has identified several factors that can be used in applying the "reasonableness" standard:

> 1. whether a valid, rational connection exists between the regulation and a legitimate government interest behind the rule;
> 2. whether there are alternative means of exercising the right in question that remain available to prisoners;
> 3. the impact accommodation of the asserted constitutional right would have on guards and other inmates and on the allocation of prison resources; and
> 4. although the regulation need not satisfy a least restrictive alternative test, the existence of obvious, easy alternatives may be evidence that the regulation is not reasonable. <u>Al-Alamin v. Gramley</u>, 926 F.2d 680, 685 (7th Cir.1991).

The plaintiff says she was not allowed to attend religious services because of her housing status, and when the defendants took away her self-addressed, postage paid envelopes, they took away her ability to practice her religion.

The defendants first argue that the envelopes were not essential to the plaintiff's practice of her religion. The defendants state the plaintiff did have a bible and other religious materials to study.  The plaintiff confirmed that she is "still" able to work on a bible lesson every day and a Chaplain is available one a month.(Plain Depo, p. 10)   The defendants also point out that the plaintiff was free to purchase other religious materials or order free religious materials.

Even if the plaintiff was somehow able to demonstrate that the envelopes were essential to the practice of her religion, the defendants have demonstrated a valid penological reason for confiscating the  envelopes.   The defendants state that self-addressed envelopes with pre-paid postage were considered contraband because inmates were using and trading the envelopes with

---

[1] *See* <u>Siddiqi v. Leak</u>, 880 F.2d 904, 909 (7th Cir.1989)(<u>Turner</u> test applies equally to policy decisions of prison officials).

other inmates like money.  No inmate was allowed to have the envelopes.  The defendants motion for summary judgement on this claim is granted.

C.  DENIAL OF MAGAZINES

The defendants argue that the plaintiff has failed to demonstrate that the denial of magazines violated her rights under the First Amendment, Due Process Clause and Equal Protection Clause.  Prisoners retain a First Amendment right to receive outside publications, and prison officials can restrict this right only if the restrictions are reasonably related to a legitimate penological interest.  Thornburgh v. Abbott, 490 U.S. 401, 414-15 (1989).

The plaintiff admits she did not have a subscription to any magazine except Vibe. The plaintiff says she was denied at least one issue of Vibe magazine by the Illinois Department of Corrections.  The plaintiff says she was informed by Librarian Beatrice Stanley that the Central Publications Review Committee determined that the magazine was a threat to security. However, the plaintiff claims the magazine did not pose a threat to security, but was instead banned because the defendants were prejudiced against African American publications.  The plaintiff says she did not contact the Central Publications Committee and apparently did not appeal the committee's decision.  The plaintiff also does not specifically identify which issue of the magazine was taken.

The defendants have stated a valid penological interest for denying the magazine.  It is difficult for the defendants or this court to address a specific issue of the magazine since the plaintiff has yet to identify which issue she was denied.  Even her initial grievance on September 23, 2001 makes only vague claims about the denial of the magazine.

The plaintiff has also not demonstrated that the denial of the magazine was a violation of the equal protection clause. "A person bringing an action under the Equal Protection Clause must show intentional discrimination against him because of his membership in a particular class, not merely that he was treated unfairly as an individual." Huebschen v. Department of Health and Social Services, 716 F.2d 1167, 1171 (7th Cir. 1983).  The plaintiff makes only vague accusations that she was denied one copy of a magazine because it was an African American publication.

The plaintiff has also not demonstrated that her due process rights were violated.  The plaintiff has not identified which specific issue she was denied and says she did not contact the Central Publications Review Committee to ask why the magazine was denied.

Lastly, it is not at all clear that the plaintiff could even demonstrate that any of the defendants had any personal responsibility or knowledge concerning the denial of the Vibe magazine.  Only Defendant Cheryl Ewing was even on the Institutional Publications Review Committee at Dwight Correctional Center. However, Ewing says once a publication was placed on the Central Publications Review Committee's disapproved list, the individual institutions did not have discretion to perform further review or remove the publication from the list.   The

6

defendants' motion for summary judgement is granted as to the denial of publications.

D.  RETALIATION

The defendants argue that the plaintiff has failed to demonstrate that they retaliated against her by denying legal mail status to her letters to the ACLU and NAACP.  To succeed on a retaliation claim, the plaintiff must "establish that his protected conduct was a motivating factor behind [the defendants' actions], but that should not end the inquiry.  Because the ultimate question is whether events would have transpired differently absent the retaliatory motive . . ." Babcock v. White, 102 F.3d 267, 275 (7th Cir. 1996).  If the same action would have occurred regardless of the retaliatory motive, the claim fails.  See Spiegla v. Hull, 371 F.3d 928, 942 (7th Cir. 2004).  Therefore, if a prison officer's actions are supported by legitimate penological concerns, the retaliation claim fails as a matter of law.

The Illinois Department of Corrections has definitions of what it considers privileged legal mail.   The defendants have convincingly argued that letters to the NAACP and ACLU would not be considered legal mail since these are referral agencies.   The defendants state that only time a letter addressed to either of these agencies would be considered legal mail is if they were addressed to a specific attorney.  The plaintiff admits this was not the case with her mail.

These same rules apply to all inmates within the Illinois Department of Corrections.  The plaintiff has provided no evidence that the defendants were motivated by a retaliatory motive when they refused to acknowledge her letters to the NAACP and ACLU as legal mail.  The motion for summary judgement is allowed as to this claim.

E. LEGAL MAIL CLAIMS

The plaintiff contends that Defendants Kuhse, Johnson, Ewing, Lovell and Ford violated her First Amendment rights by opening her privileged legal mail outside her presence or causing lengthy delays in receiving legal mail.   The plaintiff also maintains that the lengthy delays in receiving her legal mail violated her right of meaningful access to the courts.

The plaintiff first maintains that the defendants repeatedly opened her legal mail outside of her presence.   Inmates have a First Amendment right to both send and receive mail, but that right does not preclude prison officials from examining that mail for contraband. Wolff v. McDonnell, 418 U.S. 539, 576 (1974). An inmate's legal mail is entitled to greater protections because of the potential for interference with the plaintiff's right of access to the courts. Rowe v Shake, 196 F.3d 778, 782 (7th Cir. 1999) If a prison receives a letter for an inmate that is clearly identified as legal mail, the prison may potentially violated an inmate's First Amendment rights if they open the letter outside the presence of the inmate. Wolf 418 U.S. at 577.

Legal mail is defined by the Illinois Department of Corrections as mail from registered attorneys, the Illinois Attorney General's Office, Judges or Magistrate Judges from any court and organizations that provide legal representation which does not including referral agencies. 20 Ill.

Admin. Code §525.110(g)(1-4). Mail Room Supervisor Cheryl Ewing says legal mail would be opened only if the legitimacy could not be determined from the outside of the envelope. Legitimate legal mail would be opened in the inmate's presence, checked for contraband and scanned to ensure that it was legal mail. In addition, mail that was returned to the sender from the United States Postal Office as non-deliverable was opened and inspected. Defendant Ewing says it was not uncommon for inmates to communicate with each in this way in violation of department rules. Lastly, legal mail for offenders in strip cells or out of the facility was returned to the mail room unopened and re-issued when the plaintiff had moved from the strip cell or returned to the facility.

The plaintiff first claims that Defendant Kuhse opened her legal mail on July 24, 2001. Its not entirely clear, but apparently the plaintiff was in a strip cell where she could not receive mail. Apparently, Officer Kuhse opened the legal mail where the plaintiff could see it, then put it in an envelope with the rest of plaintiff's mail. The plaintiff claims this is not the correct procedure.

The plaintiff next filed a grievance claiming that on September 6, 2001, Officer Giffons handed her legal mail that had been opened outside of her presence. The plaintiff seems to blame Defendant Kuhse, but does not say who opened her mail. When the grievance was investigated, Defendant Kuhse stated he was present when Officer Giffons opened plaintiff's legal mail in front of the plaintiff.

The plaintiff filed another grievance on October 10, 2001 stating that one of letters inquiring about legal services was returned to the institution and was opened outside of her presence. Defendant Ewing responded that all mail marked return to sender was opened in the mail room for inspection.

The next grievance was filed on November 6, 2001, stating that plaintiff's legal mail had been inappropriately opened outside her presence and states other complaints about her mail. Again the plaintiff does not state any specific instances nor does she provide copies of any mail that was inappropriately opened nor does she state who opened any of her mail. The response to the plaintiff's grievance states that her mail is handled according to regular department procedure, but efforts will be made to ensure that the plaintiff receives all her mail without incident.

The plaintiff has failed to provide clear evidence that any of the named defendants inappropriately opened her legal mail outside her presence. More importantly, all of the plaintiff's examples are barred by the statute of limitations period. The plaintiff filed this lawsuit on December 29, 2003. Therefore, any claims the plaintiff was aware of before December 29, 2001 are barred by the two year statute of limitations period. See Heard v. Sheahan, 253 F.3d 316, 317-318 (2001); Gonzalez v. Entress, 133 F.3d 551, 554 (7th Cir.1998); Wilson v. Giesen, 956 F.2d 738, 740 (7th Cir. 1992). All of the plaintiff's examples occurred before December 29, 2001.

The plaintiff has also states that repeated delays in receiving legal mail violated her First Amendment rights. Again, the plaintiff points to an example that occurred in late 2000 and early 2001, outside the statute of limitations period. The plaintiff also provides an exhibit which shows the date legal mail was received and the date it was opened in the plaintiff's presence. (Plain. Resp., Ex. 30) This document does not show any significant delays in providing the plaintiff with her mail. Most were provided to the plaintiff within two days and all of the examples occurred outside the appropriate statute of limitations period. The plaintiff has not provided any evidence of her claims.

Lastly, the plaintiff alleges that delays in receiving her legal mail violated her constitutional right of access to the courts. An access to the courts claim only arises if the plaintiff suffered "actual injury" from the inability to pursue a nonfrivolous claim. Lewis v. Casey, 116 S.Ct. 2174, 2179-80 (1996); May v. Sheahan, 226 F.3d 876, 883 (7th Cir. 2000); Walters v. Edgar, 163 F.3d 430, 434 (7th Cir. 1998)(actual injury occurs when plaintiff blocked from litigating a nonfrivolous case). In her deposition, the plaintiff claims she had a case dismissed because she did not receive mail telling her of a deadline in time. The plaintiff says she told the court, and her case was reinstated. The plaintiff also says any other time she had delays in receiving mail, the court allowed her extensions of time to file a response.

It is not clear the plaintiff could prove an actual injury, since she says was still able to litigate her claim. However, the plaintiff has failed to provide the court with a specific case name or number be support of her claim. The court of appeals has often observed that summary judgment is the "put up or shut up" moment in a lawsuit. Schacht v. Wisconsin Department of Corrections, 175 F.3d 497, 504 (7th Cir.1999). This means that to defeat defendants' motion for summary judgment, the plaintiff was required to present specific evidence of her claims that occurred within the appropriate statute of limitations period. The motion for summary judgement is granted.

**IT IS THEREFORE ORDERED that;**

**1) 2) The defendants' motion for summary judgement is granted pursuant to Fed. R. Civ. P. 56. [d/e 52]  The Clerk of the Court is directed to enter judgment in favor of the defendants in accordance with this order.  The parties are to bear their own costs.  This case is terminated.**

**2) The agency having custody of the plaintiff is directed to remit the docketing fee of $150.00 from the plaintiff's prison trust fund account if such funds are available.  If the plaintiff does not have $150.00 in her trust fund account, the agency must send 20 percent of the current balance, or the average balance during the past six months, whichever amount is higher; thereafter, the agency shall begin forwarding monthly payments from the plaintiff's trust fund account to the clerk of court each time the plaintiff's account exceeds $10.00 until the statutory fee of $150.00 is paid in its entirety.  The filing fee collected shall not exceed the statutory filing fee of $150.00.**

**3) The plaintiff is responsible for ensuring the $150.00 filing fee is paid to the clerk of the court even though his case has been dismissed.  Release from incarceration does not relieve the plaintiff of his obligation to pay the filing fee in full.  The plaintiff must notify the clerk of the court of a change of address and phone number within seven days of such change.**

**4)  The clerk is directed to mail a copy of this order to the plaintiff's place of confinement, to the attention of the Trust Fund Office.**

ENTERED this _____ day of March, 2006.

                                              **s\Harold A. Baker**
                                      _____
                                          HAROLD A. BAKER
                                  UNITED STATES DISTRICT JUDGE